1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ERICA MONIZ, et al.,

Plaintiffs,

v.

SERVICE KING PAINT & BODY, LLC,

Defendant.

Case No.  5:18-cv-07372-EJD

**ORDER DENYING WITHOUT PREJUDICE MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 45

Plaintiffs Erica Moniz, Hagop Ajemyan, Hugo Gutierrez, and Philip Gabriel initiated this wage and hour putative class action against Defendant Service King Paint & Body, LLC ("Service King").  Presently before the Court is Plaintiffs' motion for class certification.  Plfs.' Mot. for Class Cert., Dkt. No. 45 ("Mot.").  The Court finds the matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  Have considered the parties' submissions, the Court DENIES the motion without prejudice.

I.      **BACKGROUND**

        A.      **Factual Background**

        Service King is an auto body collision and repair company that operates repair shops across the nation, including 37 locations in California.  Compendium of Evid. in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. P ("McGimsey Dep.") at 22:22–23:7 and Ex. 2; Decl. of A. McGimsey in Supp. of Opp'n to Mot. for Class Cert., Dkt. No. 55-1, Ex. 3 ("McGimsey Decl.") ¶ 3.

        Plaintiffs are former Service King employees located in California: Moniz worked as a

Case No.: 5:18-cv-07372-EJD
ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.
1

Service Advisor from November 2014 to October 2015; Ajemyan as a Service Advisor from December 2016 to July 2018; Gutierrez as a Service Advisor from July 2017 through June 2018; and Gabriel as a Head Painter from August 2017 to November 2018. McGimsey Decl. ¶¶ 5-12; Decl. of E. Moniz in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. D ("Moniz Decl.") ¶ 2; Decl. of H. Ajemyan in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. E ("Ajemyan Decl.") ¶ 2; Decl. of H. Gutierrez in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. F ("Gutierrez Decl.") ¶ 2; Decl. of P. Gabriel in Supp. of Plfs.' Mot. for Class Cert. ("Gabriel Decl."), Dkt. No. 45-1, Ex. G ¶ 2.

### 1. Compensation structure

The parties do not dispute the essential facts surrounding Service King's compensation structure for its Body Technicians, Painters, and Service Advisors.

#### a. Body Technicians and Painters

Body Technicians repair damage to vehicles, while Painters refinish vehicles. McGimsey Decl. ¶¶ 16, 18. During the relevant period, Service King paid Body Technicians and Painters an hourly wage, as well as incentive "Productivity Pay" based on "flag hours." *Id.* ¶¶ 19, 23; McGimsey Dep., Ex. 6 at SK003488. A "flag hour" is a set amount of time associated with completing a certain task in connection with a repair or paint job, and each flag hour has an applicable associated "flag rate." McGimsey Decl. ¶¶ 19, 23. In compensating Body Technicians and Painters, Service King calculated the employee's hourly pay and flag pay (flag hours multiplied by the flag rate) and compared the two. *Id.*; *see also* McGimsey Dep., Ex. 10 at SK004373. If the employee's hourly pay exceeded their flag pay, the employee would be paid the hourly pay amount. McGimsey Decl. ¶¶ 19, 23. If the employee's flag pay exceeded their hourly pay, Service King would pay the employee their full hourly pay, plus the difference between the hourly pay and flag pay as Productivity Pay. *Id.*; *see also* McGimsey Dep., Ex. 10 at SK004373. For example, if a Body Technician earned in a particular pay period $400 in regular hourly pay (with no overtime or double-time) and $700 in flag pay, the Body Technician would receive a total of $700 in wages:

$700 flag pay
- $400 hourly pay
$300 Productivity Earnings    + $400 hourly pay = $700 total wages

McGimsey Dep. at 57:20–58:9.  A Body Technician or Painter would always receive at least the value of their hourly pay, regardless of whether they earned additional Productivity Pay.[1] McGimsey Decl. ¶ 24.

### b.  Service Advisors

Service Advisors interacted with customers and insurance representatives, prepared repair orders, and supervised the repair process.[2]  McGimsey Decl. ¶¶ 13-14.  Service Advisors were also eligible to earn Productivity Pay.  *Id.* ¶ 21.  Instead of flag hours, Service Advisors' Productivity Pay was based on a set percentage (usually 5%) of the value of vehicle repairs completed and delivered to customers in a given week.  *Id.*; *see also* McGimsey Dep., Ex. 8 at SK004385.  If the Service Advisor's hourly pay exceeded their repair percentage pay, the employee would be paid the hourly pay amount.  McGimsey Decl. ¶ 21; *see also* McGimsey Dep., Ex. 8 at SK004385.  If the Service Advisor's repair percentage pay exceeded their hourly pay, Service King would pay the employee their full hourly pay, plus the difference between the hourly pay and repair percentage pay as Productivity Pay.  McGimsey Decl. ¶ 21; *see also* McGimsey Dep., Ex. 8 at SK004385.  For example, if a Service Advisor sold $100,000 in parts and services, at a Productivity Pay rate of 5%, the Service Advisor would earn $5,000 in Productivity Pay.  *See* McGimsey Dep. at 36:3–38:9.  If the Service Advisor earned in a particular pay period $400 in hourly pay (with no overtime or double-time) and $5,000 in Productivity Pay, the Service Advisor

---

[1] Plaintiffs' proposed classes for certification also include Body Technician Helpers and Painters Helpers who were eligible to earn Productive Pay calculated in the same manner as Body Technicians and Painters.  McGimsey Dep. at 62:1–63:9, 67:1-14, 121:19–122:9; McGimsey Dep., Ex. 6 at SK003488.  Service King does not address the inclusion of eligible Helpers in its opposition, thus the Court understands Service King to neither dispute Plaintiffs' characterization of the facts concerning Helpers' compensation nor challenge the inclusion of eligible Helpers in the proposed classes.

[2] Service King eliminated the Service Advisor position in California in February 2020.  McGimsey Decl. ¶ 15.

Case No.: 5:18-cv-07372-EJD
ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.
3

would receive a total of $5,000 in wages:

$5000 Productivity Pay
- $400 hourly pay
$4600 Productivity Earnings   + $400 hourly pay = $5000 total wages

*Id.*  A Service Advisor would always receive at least the value of their hourly pay, regardless of whether they earned additional Productivity Pay.  McGimsey Decl. ¶ 22.

### B.   Procedural Background

Plaintiffs originally filed this action in Santa Clara County Superior Court on December 6, 2018.  Dkt. No. 1.  Service King removed the matter to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453.  *Id.*  Under the operative Second Amended Complaint, Plaintiffs assert the following claims: (1) failure to pay minimum wage for all hours worked, in violation of Wage Order 4 and Cal. Lab. Code §§ 1197 and 1182.12; (2) failure to pay overtime wages, in violation of Wage Order 4 and Cal. Lab. Code §§ 204, 510, 558, 1194, and 1198; (3) failure to pay compensation for rest periods, in violation of Wage Order 4 and Cal. Lab. Code §§ 226.7 and 516; (4) failure to pay compensation for meal periods, in violation of Wage Order 4 and Cal. Lab. Code §§ 204, 210, 226.7, and 512; (5) failure to timely pay final wages, in violation of Cal. Lab. Code §§ 201-203; (6) failure to furnish accurate and complete wage statements, in violation of Cal. Lab. Code § 226; and (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.  Dkt. No. 25.  Plaintiffs also assert a claim under the Private Attorneys General Act ("PAGA"), which effectively duplicates the aforementioned Labor Code claims.  *Id.*

Plaintiffs now seek certification of the following classes:

- **Piece-Rate Class (Body Technicians & Painters)**: All current and former non-exempt employees of Service King in California who held the position of Body Technician, Body Technician Helper, Painter and/or Painter's Helper, and who were eligible to receive "Productivity Earnings," during the time period December 9, 2016 through the present date.

- **Commission Class (Service Advisors)**: All current and former non-exempt employees of Service King in California who held the position of Service Advisor,

United States District Court
Northern District of California

and who were eligible to receive "Productivity Earnings," during the time period September 25, 2014 through February 28, 2020.

- **Unpaid Overtime Class I (Body Technicians & Painters)**: All current and former nonexempt employees of Service King in California who held the position of Body Technician, Body Technician Helper, Painter and/or Painter's Helper, and who were separately compensated for rest periods during the time period December 9, 2016 to August 18, 2017.

- **Unpaid Overtime Class II (Service Advisors)**: All current and former non-exempt employees of Service King in California who held the position of Service Advisor, and who were separately compensated for rest periods during the time period January 15, 2016 to August 18, 2017.

- **Meal Period Class (Miscalculation of Section 226.7 Premiums)**: All current and former non-exempt employees of Service King in California who held the position of Service Advisor, Body Technician, Body Technician Helper, Painter and/or Painter's Helper, and who earned "Productivity Earnings," and also received a meal period premium payment in the same pay period, during the time period August 25, 2017 through the present date.

- **Direct Wage Statement Class (No Hours or Rates of Pay for "Addl Ot")**: All current and former non-exempt employees of Service King in California who held the position of Service Advisor, Body Technician, Body Technician Helper, Painter and/or Painter's Helper, and who earned "Productivity Earnings" and worked overtime in the same pay period, thereby receiving a line item on their wage statement denoted as "Addl Ot," during the time period December 21, 2017 through the present date.

- **Derivative Wage Statement Class**: All members of the following classes: (i) Piece-Rate Class (Body Technicians & Painters); (ii) Commission Class (Service Advisors); (iii) Unpaid Overtime Class I (Body Technicians & Painters); (iv) Unpaid Overtime Class II (Service Advisors), who received a wage statement; and/or (v) Meal Period Class (Miscalculation of Section 226.7 Premiums)[3], during the time period December 21, 2017 through the present date.

- **Waiting Time Penalty Class I (Body Technicians & Painters)**: All members of the following classes: (i) Piece-Rate Class (Body Technicians & Painters); (ii) Unpaid Overtime Class I (Body Technicians & Painters); and/or (iii) Meal Period Class (Miscalculation of Section 226.7 Premiums – Body Technicians and Painters), who separated their employment between December 9, 2016 through the

---

[3] Plaintiffs assert that their opening brief inadvertently omitted reference to the Meal Period Class, thus the Court includes the reference here.  Plfs.' Reply in Supp. of Mot. for Class Cert. ("Reply"), Dkt. No. 57, at 15.

Case No.: 5:18-cv-07372-EJD
ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.
5

present date.

- **Waiting Time Penalty Class II (Service Advisors)**: All members of the following classes: (i) Commission Class (Service Advisors); (ii) Unpaid Overtime Class II (Service Advisors), and/or (iii) Meal Period Class (Miscalculation of Section 226.7 Premiums – Service Advisors), who separated their employment between September 25, 2015 through the present date.

Not. of Mot. at 2–3.

The parties dispute whether Service King paid Body Technicians and Painters according to a piece-rate compensation structure and Service Advisors according to a commission compensation structure (neither of which Plaintiffs say properly compensated employees for rest periods or non-productive time[4] under California law), or whether Service King paid the employees on a strictly hourly basis.  *Compare* Mot. at 1–3 *with* Opp'n to Mot. for Class Cert. ("Opp'n"), Dkt. No. 55, at 5–10.  Should the finder of fact ultimately determine that Body Technicians and Painters were not subject to a piece-rate compensation structure and Service Advisors not subject to a commission compensation structure, Plaintiffs seek, in the alternative, certification of the Unpaid Overtime Classes.  Mot. at 3, 4.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), a court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012); *Young v. Cree Inc.*, No. 4:17-cv-06252-YGR, 2021 WL 292549, at *4 (N.D. Cal. Jan. 28, 2021).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through

---

[4] Plaintiffs expressly limit their claims regarding non-productive time to time spent in meetings. Mot. at 19.

Case No.: 5:18-cv-07372-EJD
ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.

6

United States District Court
Northern District of California

1    evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule

2    23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, Plaintiffs seek certification

3    under Rule 23(b)(3). Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or

4    fact common to class members predominate over any questions affecting only individual

5    members, and that a class action is superior to other available methods for fairly and efficiently

6    adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on

7    "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

8    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prod., Inc. v.

9    Windsor*, 521 U.S. 591, 623 (1997)).

10        "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

11   with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,

12   568 U.S. 455, 456–66 (2013) (quoting *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 351 (2011));

13   *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with

14   the Rule 23 requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

15   The Court must resolve factual disputes as "necessary to determine whether there was a common

16   pattern and practice that could affect the class as a whole." *Id.* at 983 (emphasis in original). "A

17   party seeking class certification must affirmatively demonstrate [its] compliance with the Rule."

18   *Dukes*, 564 U.S. at 350. Ultimately, a trial court has broad discretion in making the decision to

19   grant or deny a motion for class certification. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708,

20   712 (9th Cir. 2010).

21   **III.    DISCUSSION**

22        **A.    Compliance with Civil Local Rules and the Court's Standing Order**

23        The parties' submissions in connection with Plaintiffs' motion are deficient in multiple

24   respects. First, neither party complied with the Court's Standing Order for Civil Cases, which

25   requires that footnotes be no less than 12-point font and double-spaced. Service King's brief also

26   inappropriately employed single-spaced text on multiple occasions. Opp'n at 11, 15, 18. The

27   Court will not permit the parties to circumvent Civil Local Rules 7-2 and 7-3's page limits through

28   Case No.: 5:18-cv-07372-EJD
     ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.

United States District Court
Northern District of California

1    profligate use of improperly spaced text in violation of the Court's Standing Order and Civil Local

2    Rule 3-4(c)(2).

3         Second, Civil Local Rule 7-3(d) permits parties to submit Statements of Recent Decision,

4    but it does not permit additional argument concerning those authorities.  Both Plaintiffs and

5    Service King repeatedly violated the Court's prohibition on unauthorized additional legal

6    argument.  Dkt. Nos. 61, 62, 64, 65.  For the purposes of Plaintiffs' motion for class certification,

7    the Court will not consider arguments outside the parties' opening, opposition, and reply briefs.

8         In the future, the Court expects the parties to review and abide by all provisions of the

9    Civil Local Rules and the Court's Standing Order for Civil Cases.

10        **B.      Rule 23(a)**

11        Plaintiffs assert that the proposed classes satisfy the elements of Rule 23(a).

12             **1.      Numerosity**

13        A putative class may be certified only if it "is so numerous that joinder of all members is

14   impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement imposes no absolute

15   limitations; rather, it "requires examination of the specific facts of each case."  *Gen. Tel. Co. of the*

16   *Nw. v. EEOC*, 446 U.S. 318, 330 (1980).  "The Ninth Circuit has not offered a precise numerical

17   standard; other District Courts have, however, enacted presumptions that the numerosity

18   requirement is satisfied by a showing of 25-30 members."  *Ontiveros v. Safelite Fulfillment, Inc.*

19   ("*Ontiveros II*"), No. CV 15-7118-DMG (RAOx), 2017 WL 6043078, at *6 (C.D. Cal. Oct. 16,

20   2017) (quoting *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000)) (internal quotation

21   marks omitted).

22        Plaintiffs assert that numerosity is met here, because "each of the proposed classes consists

23   of hundreds of employees."  Mot. at 17.  In support of that assertion, they cite only to a

24   supplemental interrogatory response from Service King stating: "The total number of [Service

25   King's] current and former non-exempt employees paid on a commission or piece-rate basis in

26   California from September 15, 2014 to the present is approximately 923 individuals."  *Id.* (citing

27   Decl. of P. Haines in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. A ("Haines Decl.") at

28   Case No.: 5:18-cv-07372-EJD

United States District Court
Northern District of California

1   Ex. 1 at 5).  Plaintiffs acknowledge that Service King later amended its response to this

2   interrogatory to state: ". . . Defendant paid 1,013 of its current and former non-exempt employees

3   by the hour, plus productivity pay, where applicable, from September 2, 2014 to the present."  *Id.*

4   at 11 (citing Haines Decl., Ex. 2 at 2).  Service King does not address numerosity except to argue

5   that it paid its Body Technicians and Painters on an hourly basis, not a piece-rate basis, therefore

6   the proposed Piece-Rate Class consists of zero members.  Opp'n at 8.

7          Although the interrogatory responses Plaintiffs rely on suggest some measure of support

8   for sufficient numerosity for perhaps some of the proposed classes (including the Piece-Rate

9   Class, the Commission Class, classes concerning members who received Productivity Pay, and the

10  classes that derived from those classes), the interrogatory responses are potentially over-inclusive.

11  Plaintiffs do not point to any evidence in the record demonstrating that these 923 or 1,013

12  individuals were all necessarily Body Technicians, Painters, Service Advisors, or Helpers that fall

13  within the proposed class definitions.  Plaintiffs also do not provide any information on how many

14  non-exempt employees worked as Body Technicians, Painters, Service Advisors, or Helpers, or

15  how of those employees many received Productivity Pay, such that the Court is able to assess the

16  size of each proposed class.  The Court simply cannot assess whether numerosity exists on this

17  paucity of information.

18         Accordingly, the Court finds that Plaintiffs have not carried their burden of demonstrating

19  numerosity.

20                 **2.      Commonality**

21         Under Rule 23, there must be "questions of law or fact common to the class."  Fed. R. Civ.

22  P. 23(a)(2).  This "commonality" requirement "has been construed permissively" such that all

23  questions of fact and law need not be common to satisfy the Rule.  *Hanlon*, 150 F.3d at 1019.

24  "The existence of even one significant issue common to the class is sufficient to warrant

25  certification."  *Lao v. H&M Hennes & Mauritz, L.P.*, No. 5:16-CV-00333-EJD, 2018 WL

26  3753708, at *5 (N.D. Cal. Aug. 8, 2018) (quoting *Californians for Disability Rights, Inc. v.*

27  *California Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008)).

28  Case No.: 5:18-cv-07372-EJD
    ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.

1    The parties' briefs appear to gloss over commonality under Rule 23(a)(2) in favor of

2    addressing predominance under Rule 23(b)(3). *See* Mot. at 17–21; Opp'n at 12–22. Rule

3    23(a)(2)'s commonality requirement is "less rigorous than the companion requirements" of Rule

4    23(b)(3). *Hanlon*, 150 F.3d at 1019. The Ninth Circuit has further clarified that Rule 23(a)(2)

5    requires only "a single significant question of law or fact." *Stockwell v. City and Cty. of San*

6    *Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Commonality requires that the "claims must

7    depend on a common contention" that is capable of class-wide resolution—which means that its

8    determination will resolve an issue that is "central to the validity of each one of the claims in one

9    stroke." *Dukes*, 564 U.S. at 350.

10   All nine of the putative classes satisfy the commonality requirement because each of them

11   depends on a determination that a particular Service King policy or practice violated employees'

12   rights under California's wage and hour laws. The Piece-Rate and Commission Classes concern

13   the effect of Service King's Productivity Pay structure on employees' compensation. Common

14   questions "central to the validity" of those two classes include whether Service King compensated

15   Body Technicians, Painters, and Service Advisors on a piece-rate or commission basis during the

16   weeks they earned Productivity Pay, and if so, whether Service King compensated them separately

17   for rest periods and non-productive time at the proper rate of pay. A common question for the

18   alternative Unpaid Overtime Classes is whether Service King miscalculated overtime wages for

19   the time periods of December 9, 2016 to August 18, 2017 for Body Technicians and Painters and

20   January 15, 2016 to August 18, 2017 for Service Advisors, when Service King paid employees at

21   what Plaintiffs assert is the proper rate of pay. Similarly, a common question for the Meal Period

22   Class is whether Service King made meal period premium payments at the proper rate of pay. A

23   question common to the Direct Wage Statement Class is whether employees who earned

24   Productivity Pay and overtime pay in the same pay period received wage statements that properly

25   described the number of overtime hours worked and the overtime pay rate. Finally, the Derivative

26   Wage Statement Class and the Waiting Period Classes derive from the Piece-Rate and

27   Commission Classes, Unpaid Overtime Classes, and Meal Period Class, and thus concern the

28   Case No.: 5:18-cv-07372-EJD
ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.

United States District Court
Northern District of California

common questions of whether Service King provided accurate wage statements specifying the proper rates and/or hours worked and whether Service King paid the proper amount of final wages owed based on what Plaintiffs argue would be the proper rates and/or hours worked.  In sum, because each putative class's claims turn on the legality of Service King's systemic and uniform conduct, they each satisfy the requirements of Rule 23(a)(2).

### 3. Typicality and adequacy

Rule 23(a)(e) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks and citation omitted).  The "typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020).

Rule 23(a)(4) states that the named plaintiff must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[A] representative meets this standard if he (1) has no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class."  *San Pedro-Salcedo v. Häagen-Dazs Shoppe Co., Inc.*, No. 5:17-cv-03504-EJD, 2019 WL 6493978, at *4 (N.D. Cal. Dec. 3, 2019) (citing *Backus v. ConAgra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 7406505, at *5 (N.D. Cal. Dec. 22, 2016)) (internal quotation marks and citation omitted).

Here, Plaintiffs assert that they are fully prepared" to "fully cooperate with [their] counsel" and to "make [themselves] available to attend trial for several weeks."  Moniz Decl. ¶ 5; Ajemyan Decl. ¶ 9; Gutierrez Decl. ¶ 7; Gabriel Decl. ¶ 5.  They also confirm that they are "not aware of

United States District Court
Northern District of California

1    any [legal] conflicts between [themselves] and any current or former employees of Service King."[5]

2    Moniz Decl. ¶ 5; Ajemyan Decl. ¶ 9; Gutierrez Decl. ¶ 7; Gabriel Decl. ¶ 5.

3         Service King asserts that Plaintiffs are not adequate or typical representatives for three

4    reasons. First, Service King argues that Plaintiffs made prior statements admitting that they were

5    paid on an hourly basis, not piece-rate or commission. Opp'n at 10–11. Second, Service King

6    points to excerpts from Plaintiffs' depositions that it says shows that Plaintiffs lack knowledge of

7    the claims and understanding of the legal theories of their case. *Id.* at 11. Finally, Service King

8    says that Plaintiffs cannot represent Body Technicians because none of them worked as Body

9    Technicians and lack knowledge of how Service King compensated Body Technicians. *Id.* at 12.

10   According to Service King, this evidence demonstrates that Plaintiffs are not credible and have

11   testified in a manner antagonistic to the interests of other class members.

12        None of these arguments are persuasive. First, Plaintiffs testified that they were paid on an

13   hourly basis *plus some other form of additional compensation* (i.e., commission), but that does not

14   mean that they were paid *solely* on an hourly basis. That may well be Service King's defense

15   theory, but the facts currently before the Court do not conclusively demonstrate that Service King

16   paid its Body Technicians, Painters, and Service Advisors on a purely hourly basis. Relatedly, as

17   to Plaintiffs' purported lack of knowledge about their case, Service King's complaints focus

18   mainly on Plaintiffs' purportedly inconsistent deposition testimony regarding their compensation.

19   It hardly seems fair to find Plaintiffs inadequate because Service King chose confusing

20   compensation structures that it itself has vacillated in characterizing. *Compare* Haines Decl., Ex.

21   1 at 5 (Service King's interrogatory response stating number of employees paid on a piece-rate or

22   commission basis) *with* Haines Decl., Ex. 2 at 2 (revising same interrogatory response to state

23   number of employees paid on an hourly basis plus productivity pay). The deposition testimony

24   indicates that Plaintiffs were paid at least hourly wages plus additional Productivity Pay, which is

25

26   _____

27   [5] *But see infra* Section III.C.2; Def.'s Compendium of Evid., Exs. 1.2 and 1.4 (complaints filed by named Plaintiffs asserting other wage and hour complaints in state court).

28   Case No.: 5:18-cv-07372-EJD
     ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.

United States District Court
Northern District of California

1   not inherently inconsistent with Plaintiffs' theory that in the periods where Body Technicians,

2   Painters, and Service Advisors earned Productivity Pay, they were effectively paid on a piece-rate

3   or commission basis.

4          Service King's other attacks on Plaintiffs' lack of knowledge are based on a

5   mischaracterization of deposition testimony.  Service King asserts that Gutierrez and Gabriel

6   "focused their deposition on theories they are not pursuing," Opp'n at 11 (citing Def.'s

7   Compendium of Evid., Ex. 7 ("Gutierrez Dep.") at 105:7–106:11; Def.'s Compendium of Evid.,

8   Ex. 8 ("Gabriel Dep.") at 83:19–84:1), but a review of those cited transcript portions and the

9   testimony immediately following indicates that Gutierrez and Gabriel asserted that they were not

10  always compensated for all time worked with respect to Productivity Pay and unpaid rest breaks,

11  meal periods, and meetings—assertions that directly relate to the claims concerning the Piece-Rate

12  and Commission Classes.  Gutierrez Dep. at 106:6-24; Gabriel. Dep. at 84:3-16.  Similarly,

13  Service King represented that Ajemyan's handwritten notes were provided by his counsel, Opp'n

14  at 11, but Ajemyan testified repeatedly that he wrote the notes himself.  Def.'s Compendium of

15  Evid., Ex. 6 ("Ajemyan Dep.") at 13:13–17:10.  At any rate, "[t]he threshold of knowledge

16  required to qualify a class representative is low; a party must be familiar with the basic elements

17  of her claim, and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case."

18  *Californians for Disability Rights*, 249 F.R.D. at 349 ("'[I]t is enough that the representative

19  understand the gravamen of the claim.'") (internal quotation marks and citations omitted); *see also*

20  *Pina v. Con-Way Freight, Inc.*, No. 10-00100 JW, 2012 WL 1278301, at *5 (N.D. Cal. Apr. 12,

21  2012) ("The fact that plaintiffs are familiar with the basis for the suit and their responsibilities as

22  lead plaintiffs is sufficient to establish their adequacy.").  Ajemyan's testimony tends to show that

23  he is, in fact familiar with the basic elements of his claim, thus the Court cannot say based solely

24  on this portion of his deposition that he is an inadequate representative.

25         Service King's last argument that none of the Plaintiffs worked as Body Technicians is

26  equally unavailing.  Service King does not dispute that Painters and Body Technicians were

27  compensated in the same fashion, thus the absence of a named plaintiff who worked as a Body

28  Case No.: 5:18-cv-07372-EJD
    ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.
                                    13

Technician is not necessarily a barrier to Gabriel's adequacy as a representative for Body Technicians. Gabriel Dep. at 133:7-12 ("Q. . . . Do you have an understanding of how body technicians were compensated at Service King?  A. Pretty much the same as me.").  Although Service King criticizes Gabriel for purportedly testifying that Body Technicians and Painters were compensated on an "hourly plus commission" basis, the deposition transcript shows that Gabriel clarified that when he said "commission," he actually meant on an effectively piece-rate basis (i.e., Productivity Pay based on flag hours and flag pay).  *Id.*  Gabriel also testified that Service Advisors were paid on an hourly plus commission basis, which he expressly clarified as meaning a percentage of sales—further indicating that he understood and appreciated the distinction between commission and piece-rate, however inartfully he may have responded to the question about Body Technicians and Painters.  *Compare id.* with *id.* at 132:18-24; *Ontiveros II*, 2017 WL 6043078, at *9 (rejecting argument that named plaintiff was atypical because he never held a customer advocate position, because the same payroll practices applied to all employees in California regardless of their respective job titles).

Service King does not challenge the adequacy of Plaintiffs' counsel, and the Court perceives no issue there.  The declarations of Plaintiffs' attorneys reveal that they have undertaken considerable efforts to investigate the claims in this action, they have extensive experience and knowledge regarding wage and hour class actions, and they have the necessary personnel and resources to prosecute this action to final judgment.  Haines Decl. ¶¶ 1-9, 13; Decl. of M.J. Bradley in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. B ¶¶ 1-17; Decl. of E. Boyajian in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. C ¶¶ 1-13.

Accordingly, the Court finds that Plaintiffs and their counsel satisfy the typicality and adequacy requirements.

### C.    Rule 23(b)(3)

The Court finds that Plaintiffs have not met the requirements of Rule 23(a) and thus need not address the Rule 23(b)(3) factors.  Nevertheless, the Court proceeds with the Rule 23(b)(3) analysis to provide the parties with guidance for future motion practice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 1.  Predominance

While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate.  "Though there is substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Wolin*, 617 F.3d at 1172 (quoting *Amchem Products, Inc.*, 521 U.S. at 623–24).

The Court addresses each putative class in turn.

### a.  Piece-Rate and Commission Classes

Service King contends that individualized issues predominate the proposed Piece-Rate and Commission Class with respect to Plaintiffs' claims concerning non-productive meeting time and unpaid rest breaks.  Opp'n at 12–22.

As to non-productive meetings[6], Service King argues that the evidence shows that: the frequency and length of meetings varied by location; not all employees were required to attend meetings; meeting length and attendance varied even among employees at the same locations; and employees (including Gabriel, Moniz, and Ajemyan) skipped meetings on an irregular basis. Def.'s Compendium of Evid., Ex. 1.1 ("Def.'s Decls. Summ.") at Items Nos. 11-20, 25-31[7]; Gabriel Decl. ¶ 4; Gabriel Dep. at 86:25–87:5, 88:13–89:22, 94:25–97:10; 112:9-24, 114:1-24; Moniz Decl. ¶ 4; Moniz Dep. at 52:1-11, 114:1–115:5, 116:2-4; Ajemyan Dep. 95:5-14, 98:15-20, 100:4-17.  No written records exist concerning when, where, and for how long meetings were held, or who attended.  Def's. Decls. Summ. at Items Nos. 11, 25; Gabriel Dep. at 89:23–90:6,

---

[6] Service King's argument that meetings were actually productive, not non-productive, is a merits-based question that the Court need not and does not resolve at this stage.

[7] Service King provided dozens of declarations from employees in support of its opposition to class certification.  It summarized the pertinent portions as Exhibit 1.1 in its Compendium of Evidence.  Some of the citations in Exhibit 1.1 to specific paragraphs of particular declarations are not accurate.  *Compare, e.g.*, Def.'s Decls. Summ. at Item No. 18 (citing to Decl. of E. Ruano, Dkt. No. 55-1, Ex. 15 ("Ruano Decl.") ¶ 16 for the proposition that some General Managers do not have regular check-ins with *Body Technicians or Painters*) *with* Ruano Decl. ¶ 16 (discussing lack of regular check-ins with *Service Advisors*) *and* Ruano Decl. ¶ 14 (discussing lack of regular check-ins with *Body Technicians and Painters*).  The Court expects Service King to provide only accurate citations to evidence going forward.

97:11-14; Moniz Dep. at 115:22–116:1; Ajemyan Dep. at 103:11-19.  Most significantly, Service King takes issue with Plaintiffs' proposed method of proving the putative classes' non-productive time claims using a statistical sampling method for determining the class's average number of weekly non-productive work hours.  To accomplish this sampling, Plaintiffs propose deposing 50 randomly selected Body Technicians/Painters or Service Advisors to determine an average number of weekly non-productive work hours, and then further deposing tranches of 50 Body Technicians/Painters or Service Advisors until a statistically significant sample size is reached. Compendium of Evid. in Supp. of Plfs.' Mot. for Class Cert., Dkt. No. 45-1, Ex. O ("DuMond Report") at 13–14, 16.

In response, Plaintiffs argue that Service King's own witnesses say that meetings were held weekly to monthly, indicating that all locations had some degree of regularity.  Reply at 11–12.  But Plaintiffs otherwise do little to address the individualized nature of meeting attendance.

On the question of predominance, the Court finds instructive the Central District of California's class certification order in *Ontiveros II*.  In that case, the court considered an incentive pay plan very similar to Service King's Productivity Pay structure and a proposed method of assessing non-productive time from the same expert economist Plaintiffs retained here, J. Michael DuMond, Ph.D.  *Ontiveros II*, 2017 WL 6043078, at \*2; *see also Ontiveros v. Safelite Fulfillment, Inc.* ("*Ontiveros I*"), No. CV 15-7118-DMG (RAOx), 2017 WL 6261476, at \*2 –3 (C.D. Cal. Oct. 12, 2017).  As he did in *Ontiveros II*, Dr. DuMond proposes "selecting a 'full representative sample' of technicians, deposing them for the purposes of ascertaining each sample technician's nonproductive weekly work time, and using the average number of nonproductive hours obtained from this process to determine the damages" for the putative class.  *Ontiveros II*, 2017 WL 6043078, at \*10.  The Central District ultimately denied the motion to certify the non-productive time class because Dr. DuMond's proposed method "does not ensure that it computes only the average number of nonproductive hours worked in weeks in which putative class members [received Productivity Pay].  Indeed, the sampling method does not tether nonproductive hours to periods when putative class members [received Productivity Pay] at all."  *Id.* at \*11.  Accordingly,

United States District Court
Northern District of California

1  the *Ontiveros II* court declined to certify the non-productive time class.  *Id.*  The same problem the

2  Central District faced also exists here with Plaintiffs' current proposal, and it counsels against

3  certification.

4       As to the putative Piece-Rate and Commission Classes' claims for unpaid rest breaks,

5  Service King cites similar individualized issues.  Specifically, employees (including Gabriel,

6  Moniz, and Ajemyan) voluntarily skipped rest breaks for various reasons, including to earn more

7  Productivity Pay, because they forgot, because they wanted to leave work earlier, or because they

8  felt a break was unnecessary.  Def's. Decls. Summ. at Items Nos. 32-34; Gabriel Dep. at 126:6-

9  129:12; Moniz Dep. at 118:4-21; Ajemyan Dep. at 136:2-137:25.  There are no written records of

10  when employees took their rest periods or voluntarily worked through them.  Def's. Decls. Summ.

11  at Item No. 33; Gabriel Dep. at 130:4-6; Moniz Dep. at 124:10-17, 125:21–126:2; Ajemyan Dep.

12  at 136:11-13.  Dr. DuMond suggests calculating unpaid rest break damages[8] by counting the

13  number of shifts lasting at least 3.5 hours and then multiplying that number by the applicable

14  hourly rate of pay.  DuMond Report at 14–16.  But because Plaintiffs' claims relate only to weeks

15  in which class members earned Productivity Pay, they must explain how these damages

16  calculations would take that into account.  Plaintiffs have not done so.

17       Finally, the Court observes that the Piece-Rate Class definition applies to Body

18  Technicians and Painters who were merely *eligible* to receive Productivity Pay, not those who

19  actually *earned* Productivity Pay.  Similarly, the Commission Class definition applies to Service

20  Advisors who are *eligible* to receive Productivity Pay, not merely those who actually *earned* it.  It

21  is unclear whether any putative class members were eligible but never received Productivity Pay.

22  *See Ontiveros II*, 2017 WL 6043078, at *11 (finding application of Dr. DuMond's methodology to

23  the entire class "questionable" because defendant had provided uncontroverted evidence that some

24  putative class members never received the incentive pay at issue).  To the extent such individuals

25  ────────────

26  [8] Dr. DuMond's expert report discusses this method only as to the Commission Class, but
Plaintiffs suggest the same method may be applied to the Piece-Rate Class.  *See* DuMond Report

27  at 14–16; Mot. at 18–19.

28  Case No.: 5:18-cv-07372-EJD
ORDER DENYING W/O PREJ. MOT. FOR CLASS CERT.

exist, the Piece-Rate and Commission Classes definitions are overbroad.

### b.    Meal Period Class

Service King does not expressly argue that the Meal Period Class should not be certified for lack of predominance and instead focuses on the merits of the meal period premium claim. Opp'n at 22–23.  However, in a one-sentence footnote, Service King states: "Plaintiffs also propose no method to calculate the regular rate for meal periods, which under their theory, would have to factor in unknown amounts of 'non-productive' time." *Id.* at 23 n.10.  To the extent this echoes the predominance issues raised as to the Piece-Rate and Commission Classes, the Court notes that Plaintiffs' proposed definition for the Meal Period Class requires class members to receive both Productivity Pay and a meal period premium payment in the same pay period.  Dr. DuMond's proposed method of calculating damages does not appear to account for the Productivity Pay requirement.  *See* DuMond Report at 17–18.  As with the Piece-Rate and Commission Classes, Plaintiffs have not explained how they propose to tether Productivity Pay and meal period premium payments in a manner that would permit calculation of damages, which cuts against certification of the Meal Period Class.  *See supra* Section III.C.1.a.

### c.    Remaining putative classes

Service King does not challenge the remaining putative classes with respect to predominance, but instead offers arguments attacking the merits of Plaintiffs' claims.  Opp'n at 22–25.  The damages for each putative class member can be determined by resort to Service King's weekly payroll and daily timekeeping records.  *See* DuMond Report at 10, 16–17, 18–19 (opining that Service King's records could be used to determine the amounts of penalties and/or unpaid wages that are owed to the Unpaid Overtime Classes, the Direct Wage Statement Class, and the Waiting Time Penalty Classes).

Accordingly, common questions predominate over questions affecting only individual members of the Unpaid Overtime Classes, the Direct Wage Statement Class, and the Waiting Time Penalty Classes.  *Ontiveros II*, 2017 WL 6043078, at *12 (citing *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003)).  The parties agree that the Derivative Wage Statement Class

derives wholly from the Piece-Rate and Commission Classes, the Unpaid Overtime Classes, and the Meal Period Class. Mot. at 21; Opp'n at 24. Thus, individualized issues predominate as to the Derivative Wage Statement Class to the extent that putative class derives from the Piece-Rate Class, the Commission Class, and the Meal Period Class for the reasons described above. *See supra* Sections III.C.1.a-b.

### 2. Superiority

"In determining superiority, courts must consider the four factors of Rule 23(b)(3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001). These factors are: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23. "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190.

As to the first and third factors, nothing in the record suggests that class members have any individual interest in controlling the prosecution or defense of separate actions, and neither side contends that this forum is undesirable. However, the Court perceives potential issues as to the second and fourth factors. As described above, there are numerous individualized issues and questions concerning damages calculations that suggest difficulty in managing this class action. *See supra* Sections III.C.1.a, c. Additionally, it appears that Ajemyan, Gutierrez, and Gabriel have filed other wage and hour complaints in state court. Def.'s Compendium of Evid., Exs. 1.2 and 1.4. The parties do not explain the current status of these other cases: Service King raises their existence only to dispute adequacy, and Plaintiffs appear not to address these cases at all in their reply brief. *But see* Moniz Decl. ¶ 5 (stating that she is "not aware of any [legal] conflicts between [herself] and any current or former employees of Service King"); Ajemyan Decl. ¶ 9 (same);

Gutierrez Decl. ¶ 7 (same); Gabriel Decl. ¶ 5 (same).  It is unclear whether certifying the putative classes would interfere with those other cases, or vice versa.

Accordingly, the Court finds that on this record, Plaintiffs have not demonstrated that litigating this case on behalf of the putative classes is superior or manageable.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice the motion for class certification.  Should Plaintiffs file a renewed motion for class certification, the parties need not address the Rule 23(a)(2) factors the Court has already determined Plaintiffs to have satisfied. Future briefing from both parties should be organized in a manner that makes clear which Rule 23(a) or (b) factor is being addressed, with appropriate support and authority for their position rather than the piecemeal organization presented to the Court on the current motion.

**IT IS SO ORDERED.**

Dated: February 10, 2022

EDWARD J. DAVILA
United States District Judge